# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS LUFKIN DIVISION

| | | |
|---|---|---|
| **DEBRA MORRIS, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE OF** | § | |
| **THE ESTATE OF KENNETH W.** | § | |
| **MORRIS, ASHLEY MORRIS,** | § | |
| **AMANDA MORRIS WRIGHT,** | § | |
| **JIMMY WILLIAMS, REBECCA** | § | |
| **WILLIAMS, ORLANDO ORDAZ,** | § | |
| **AND ROY McCULLOUGH,** | § | |
| | § | **CIVIL ACTION NO. _____** |
| *Plaintiffs,* | § | |
| | § | **JURY** |
| **V.** | § | |
| | § | |
| **AIRCON CORPORATION,** | § | |
| **GRECON, INC., MID-SOUTH** | § | |
| **ENGINEERING COMPANY, and** | § | |
| **GLOBAL ASSET PROTECTION** | § | |
| **SERVICES LLC** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### Nature of Action

On April 26, 2014, there was a fire and explosion in the Sander Dust Collection System at the Georgia Pacific plywood mill in Corrigan, Texas. This case is brought to recover damages sustained and arising out of the severe personal injuries suffered by Plaintiffs as a result of the fire and explosion. Plaintiffs bring suit against Defendants based

on claims for Negligence, Gross Negligence, Product Liability, Negligence *Per Se*, and Civil Conspiracy.[1]

## A. PARTIES

1.      Plaintiff, Debra Morris, is an individual and resident of Angelina County, Texas.  Debra Morris is the widow of Decedent Kenneth W. Morris[2] and brings this suit in her individual capacity and as representative of the Estate of Kenneth W. Morris.

2.      Ashley Morris is the daughter of Kenneth W. Morris.  Ashley Morris is an individual and resident of Angelina County, Texas.

3.      Amanda Morris Wright is the daughter of Kenneth W. Morris.  Ashley Morris Wright is an individual and resident of Angelina County, Texas.

4.      Jimmy Williams is an individual and resident of Angelina County, Texas. Jimmy Williams was employed by Georgia Pacific and severely burned in the fire and explosion at the Georgia Pacific Plant in Corrigan, Texas, April 26, 2014.

5.      Rebecca Williams is an individual and resident of Angelina County, Texas and the wife of Plaintiff, Jimmy Williams.

6.      Orlando Ordaz is an individual and resident of Angelina County, Texas. Orlando Ordaz was employed by Georgia Pacific and severely burned in the fire and explosion at the Georgia Pacific Plant in Corrigan, Texas, April 26, 2014.

---

[1] To the extent Plaintiffs' claims relate to engineering services performed by a licensed professional engineer, Plaintiffs' Complaint is supported by a *Certificate of Merit* signed by licensed professional engineer, Mike Sawyer; attached hereto as **Exhibit A**.

[2] Decedent Kenneth W. Morris was employed by Georgia Pacific and severely burned in the fire and explosion at the Georgia Pacific Plant in Corrigan, Texas, April 26, 2014, and later died as a result of his injuries sustained in the explosion.

7.      Roy McCullough is an individual and resident of Angelina County, Texas. Roy McCullough was employed by Georgia Pacific and severely burned in the fire and explosion at the Georgia Pacific Plant in Corrigan, Texas, April 26, 2014.

8.      Defendant AirCon Corporation is a foreign corporation formed under the laws of the State of Tennessee with its principal place of business in Memphis, Tennessee. The Court may exercise personal jurisdiction over Defendant AirCon Corporation because it does a substantial amount of business in Texas.  Defendant AirCon Corporation's continuous and systematic contacts with Texas justify the exercise of general jurisdiction. Defendant AirCon is also subject to the specific jurisdiction of the Court because its contacts with Texas are directly related to the fire and explosion from which Plaintiffs' claims arise. This defendant may be served by serving its registered agent for service in this state, CT Corporation System, 350 N. Saint Paul St., Dallas, TX 75201-4240.

9.      Defendant GreCon, Inc. is a foreign corporation formed under the laws of the State of Oregon with its principal place of business in Tigard, Oregon.  The Court may exercise personal jurisdiction over Defendant GreCon, Inc. because it does a substantial amount of business in Texas.  Defendant GreCon, Inc.'s continuous and systematic contacts with Texas justify the exercise of general jurisdiction.   Defendant GreCon, Inc. is also subject to the specific jurisdiction of the Court because its contacts with Texas are directly related to the fire and explosion from which Plaintiffs' claims arise. This defendant may be served via the Secretary of State of Texas through its registered agent, Herman Staats, 15875 SW 74th Ave., Portland, Oregon  97224-7934.

10.     Defendant Mid-South Engineering Company is a foreign corporation formed under the laws of the State of Arkansas with its principal place of business in Hot Springs, Arkansas.   The Court may exercise personal jurisdiction over Defendant Mid-South Engineering Company because it does a substantial amount of business in Texas. Defendant Mid-South Engineering Company's continuous and systematic contacts with Texas justify the exercise of general jurisdiction.   Defendant Mid-South Engineering Company is also subject to the specific jurisdiction of the Court because its contacts with Texas are directly related to the fire and explosion from which Plaintiffs' claims arise.  This Defendant may be served with process by serving its registered agent, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas  78701.

11.     Defendant Global Asset Protection Services, LLC ("GAPS") is a foreign limited liability company with its principal place of business in Hartford, Connecticut. Defendant GAPS is subject to personal jurisdiction in this Court because Defendant GAPS does a substantial amount of business in Texas.   Additionally, Defendant GAPS's continuous and systemic contacts with Texas justify the exercise of general jurisdiction and Defendant GAPS is subject to the specific jurisdiction of this Court because its contacts with Texas are directly related to the fire and/or explosion from which Plaintiffs' claims arise.  Defendant GAPS may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX  75201-3136.

## B.  JURISDICTION

12.     The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(A)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000.00 excluding interest and costs.  Plaintiffs are citizens of Texas and Defendants are citizens of Tennessee, Oregon, Arkansas, and Connecticut.

## C. VENUE

13.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred in this district. The fire and explosion at the Georgia Pacific Plant occurred in Polk County, Texas.

## D.  FACTS

14.     At all times relevant to the claims herein, Georgia Pacific's Corrigan plywood mill was equipped with a *Sander Dust Collection System* designed, manufactured and installed by **AirCon Corporation**. The *Sander Dust Collection System* is dedicated to collecting dust generated by the plywood sander at Georgia Pacific's plywood mill in Corrigan.

15.     The *Sander Dust Collection System* consists of ductwork, a negative pressure vacuum fan system, a spark/fire detection and suppression system, and a dust collection and filter system known as a *Bag House*.  Bag houses are known to pose a significant risk of fire and explosion due to the large amounts of explosive wood dust particles suspended within the system.

16.     To protect against these known dangers, the *Sander Dust Collection System* was equipped with a **GreCon** spark detection and extinguishment system. The spark

detection and extinguishment system was intended to protect against dust fires and explosions in the *Sander Dust Collection System* by detecting sparks or fire in the duct work and extinguishing them before they could reach the bag house.

17.     The bag house is also equipped with a *failsafe* system meant to flood the baghouse with water in the event of fire. This system is referred to as a 'deluge system' and consists of a high pressure water piping system with a *deluge valve* that should have automatically operated to flood the baghouse when fire was detected in the ductwork system.

18.     Dust collection systems can endanger human lives if not properly planned, designed, manufactured, installed, certified, tested, inspected, serviced and maintained.

## Defendant Mid-South Engineering Company

19.     **Mid-South Engineering Company** [Mid-South] was retained by Georgia Pacific's predecessor, International Paper, and tasked with the responsibility for the engineering and design specifications of the *Sander Dust Collection System*. Mid-South drafted and created the initial design specifications for the system. Mid-South was likewise involved in all phases of the initial planning and construction of the system as well as the initial inspection of the system after completion.

## Defendant AirCon Corporation

20.     **Defendant AirCon Corporation** [AirCon] was responsible for the final design, manufacture, installation, and inspection of the entire *Sander Dust Collection System.* Under its contract with International Paper, Aircon was required to comply with the minimum specifications contained in the Mid-South plans and scope of work.

6

However, AirCon was separately responsible for ensuring that the *Sander Dust Collection System* was designed, manufactured, installed, and inspected in a safe and workman like manner such that the system would be free from any dangerous defects that could pose an unreasonable risk of harm to persons working with or near the *Sander Dust Collection System*.

21.     Included within Defendant AirCon's responsibilities was the responsibility for determining the design and specification requirements for the spark and fire detection / suppression system(s) intended to protect the *Sander Dust Collection System* and persons working with and around the system.

22.     Included within Defendant AirCon's responsibilities was the responsibility for determining the design, manufacture, installation and inspection of the ductwork system which carries the dust particles through the plant out to the Bag House and from the Bag House to the briquetter.  AirCon's responsibilities included determining what component parts were required to be included in the system including but not limited to the spark/fire detection and suppression systems, abort gates, dampers, and deluge systems.

23.     Included within Defendant AirCon's responsibilities was the responsibility for determining the design, manufacture, installation, and inspection of the Bag House itself including its component parts.

24.     Subsequent to the initial design, manufacture, installation, and inspection of the *Sander Bag House System*, Defendant AirCon continued to provide consulting and inspection services to International Paper and Georgia Pacific relating to the Sander Bag House System and its component parts.

**Defendant GreCon Inc.**

25.     Defendant GreCon Inc. [GreCon] was also responsible for the final design, manufacture, installation, and inspection of the spark and fire detection/suppression system(s) intended to protect the *Sander Dust Collection System* and persons working with and around the system.  Defendant GreCon was likewise required to comply with the minimum specifications contained in the Mid-South and AirCon plans and scope of work.

26.     However, GreCon was separately responsible for ensuring that the fire detection/suppression system(s) contained within the *Sander Dust Collection System* was designed, manufactured, installed, and inspected in a safe and workman like manner such that the system(s) would be free from any dangerous defects that could pose an unreasonable risk of harm to persons working with or near the *Sander Dust Collection System*.

27.     Subsequent to the initial design, manufacture, installation, and inspection of the *Sander Bag House System*, Defendant GreCon continued to provide consulting and inspection services to International Paper and Georgia Pacific relating to the Sander Bag House System and its component parts.

**Defendant Global Asset Protection Services L.L.C. [GAPS]**

28.     Defendant GAPS was retained by International Paper and Georgia Pacific specifically to inspect the *Sander Bag House System* to identify design, manufacture, installation defects and any other unsafe condition relating to the *Sander Bag House System*.  It was GAPS' responsibility to serve as a third party safety reviewer meant to inspect the systems for any

unreasonable defect or dangerous condition.  GAPS failed to identify any of the numerous defects and dangerous conditions regarding the *Sander Bag House System* which proximately caused the fire and explosion and resulted in Plaintiffs' injuries.  GAPS failed to warn Plaintiffs or Georgia Pacific of the numerous defects and dangerous conditions regarding the *Sander Bag House System* which proximately caused the fire and explosion and resulted in Plaintiffs' injuries.

## Incident Facts

29.    On the evening of April 26, 2014, there was a 'double feed' at the Corrigan mill's sander where two plywood boards were pulled into the sander at the same time - rather than the usual one. The double feed caused numerous sparks and heat, and a fire erupted at the sander which spread into the duct work of the *Sander Dust Collection System*. Georgia Pacific employees, Plaintiff, Decedent, Kenneth Morris, and Plaintiffs, Jimmy Williams, Orlando Ordaz, and Roy McCullough, were called on to assist in fighting the fire and securing the Bag House. Tragically, the Sander Bag House exploded in a massive fireball severely burning Kenneth Morris, Jimmy Williams, Orlando Ordaz, Roy McCullough and others.

30.    Plaintiff Decedent, Kenneth Morris was transported by life-flight to Herman Hospital in Houston where he received all the best medical care available.  Despite the best efforts of his doctors, Mr. Morris died 42 agonizing days later due to his burn injuries and resulting complications.

31.    Plaintiff Jimmy Williams suffered severe, painful burns throughout his body as well as other significant injuries requiring extensive medical treatment.  Plaintiff Jimmy

Williams continues to suffer from his injuries.  Mr. Williams's injuries are permanent in nature and he will require ongoing medical treatment for the rest of his life.

32.     Plaintiff Orlando Ordaz suffered severe, painful burns throughout his body as well as other significant injuries requiring extensive medical treatment.  Plaintiff Orlando Ordaz continues to suffer from his injuries.  Orlando Ordaz's injuries are permanent in nature and he will require ongoing medical treatment for the foreseeable future.

33.     Plaintiff Roy McCullough suffered severe, painful burns throughout his body as well as other significant injuries requiring extensive medical treatment.  Plaintiff Roy McCullough continues to suffer from his injuries.  Roy McCullough's injuries are permanent in nature and he will require ongoing medical treatment for the foreseeable future.

## E.  CAUSES OF ACTION

### A.     NEGLIGENCE CLAIMS AGAINST ALL DEFENDANTS

34.     Plaintiffs incorporate the above paragraphs as if set forth fully below. Defendants owed Plaintiffs a duty of ordinary care.  Defendants, by and through their officers, employees, agents and representatives, were negligent in their planning, designing, manufacturing, installing, testing, certifying, inspecting, servicing and maintaining of the *Sander Dust Collection System,* and its subcomponents including but not limited to the duct work system, the fire detection, suppression and prevention equipment, and the Bag House.   Defendants, by and through their officers, employees,

agents, and representatives, committed acts and omissions which breached that duty and which collectively and severally constituted negligence and gross negligence.

## Negligence Claims Against Mid-South

35.     Defendant Mid-South's negligent acts and omissions include but are not limited to:

1. Negligent Engineering;
2. Failing to properly design, plan, test, certify, or inspect *Sander Dust Collection System* including the duct work system, fire detection, suppression and prevention systems described above;
3. Failing to recognize and remediate foreseeable or known hazards;
4. Failing to follow all applicable laws, regulations, and standards adopted in the State of Texas regarding the *Sander Dust Collection System* including the fire detection, suppression and prevention systems included therein;
5. Failing to warn of or otherwise protect against, known or foreseeable hazards;
6. Creating latent dangers but failing to warn of them;
7. Failing to provide adequate documentation relating to the *Sander Dust Collection System* including but not limited to proper operating, maintenance, and emergency procedures;
8. Failing to provide adequate training to Georgia Pacific (and/or its predecessor) and its employees;
9. Failing to provide adequate and competent management and engineering personnel; and
10. Such other and further acts or omissions as may be revealed during the prosecution of this case.

Said acts of negligence and gross negligence were the proximate cause of the injuries to Decedent and Plaintiffs' resulting damages.

## Negligence Claims Against AirCon

36.     Defendant AirCon's negligent acts and omissions include but are not limited to:

1. Negligent Engineering;

2. Failing to properly design, plan, manufacture, test, certify, or inspect the *Sander Dust Collection System* including the duct work system, fire detection, suppression and prevention systems described above;
3. Failing to recognize and remediate foreseeable or known hazards;
4. Failing to follow all applicable laws, regulations, and standards adopted in the state of Texas regarding the *Sander Dust Collection System* including the fire detection, suppression and prevention systems included therein;
5. Failing to warn of, or otherwise protect against, known or foreseeable hazards;
6. Creating latent dangers but failing to warn of them;
7. Failing to provide adequate documentation relating to the *Sander Dust Collection System* including but not limited to proper operating, maintenance, and emergency procedures;
8. Failing to provide adequate training to Georgia Pacific (and/or its predecessor) and its employees;
9. Failing to provide adequate and competent management and engineering personnel; and
10. Such other and further acts or omissions as may be revealed during the prosecution of this case.

Said acts of negligence and gross negligence were the proximate cause of the injuries to

Decedent and Plaintiffs' resulting damages.

## <u>Negligence Claims Against GreCon</u>

37.     Defendant GreCon's negligent acts and omissions include but are not limited

to:

1. Negligent Engineering;
2. Failing to properly design, plan, manufacture, test, certify, or inspect the fire detection, suppression and prevention system components of the *Sander Dust Collection System*;
3. Failing to recognize and remediate foreseeable or known hazards;
4. Failing to follow all applicable laws, regulations, and standards adopted in the state of Texas regarding the fire detection, suppression and prevention system components of the *Sander Dust Collection System*;
5. Failing to warn of, or otherwise protect against, known or foreseeable hazards;
6. Creating latent dangers but failing to warn of them;
7. Failing to provide adequate documentation relating to the *Sander Dust Collection System* including but not limited to proper operating, maintenance, and emergency procedures;

8. Failing to provide adequate training to Georgia Pacific (and/or its predecessor) and its employees;

9. Failing to provide adequate and competent management and engineering personnel; and

10. Such other and further acts or omissions as may be revealed during the prosecution of this case.

38.   Specific examples of negligent design and manufacture committed by

Defendants Mid-South, AirCon, and GreCon include but are not limited the following:

A. Spark/Fire detection and suppression equipment being located too far from the sander;

B. Omitting the detect/extinguish zone and detect/abort zone prior to entering the Bag House as required by specifications;

C. No inspection ports on ductwork other than cleanout port over the sander;

D. No access points to enable ductwork to be maintained, or cleaned of debris;

E. No fire suppression within ductwork other than spark suppression water curtains which are insufficient to extinguish sustained fire;

F. Bag House controls being located under Bag House itself making it impossible employees to operate controls without exposing themselves to significant risk of injury or death during emergency procedures such as on the day of the fire;

G. Utilization of a *Damper* to attempt isolation on the outlet side of the Bag House instead of a 2nd Abort Gate as required by NFPA standards for a negative pressure system;

H. Defective design of the explosion relief panels such that the fire and explosion is directed into an area where personnel are expected to be, instead of in a safe direction;

I. Failure to design the system in such a way as to cause the Bag House Deluge system to automatically engage in the event of a sustained fire in the ductwork;

J. Insufficient emergency protocol documentation: including lack of written protocol and procedures for dealing with a sustained fire in ductwork *(such as a protocol instructing plant personnel to manually engage the Deluge System for the Bag House in the event of sustained fire in the ductwork)*; and

K. Insufficient operating procedures/protocol documentation.

39.   Said acts of negligence and gross negligence were the proximate cause of the

injuries to Decedent and Plaintiffs' resulting damages.

## **Negligence Claims Against GAPS**

40.     Defendant GAPS's negligent acts and omissions include but are not limited

to:

1. Negligent testing, certification, and inspection of the *Sander Dust Collection System* and its subcomponents including but not limited to the duct work system, the fire detection, suppression and prevention system(s), and the Bag House;
2. Failing to recognize and remediate foreseeable or known hazards;
3. Failing to follow all applicable laws, regulations, and standards adopted in the state of Texas regarding testing, certification, and inspection of the *Sander Dust Collection System* and its subcomponents including but not limited to the duct work system, the fire detection, suppression and prevention system(s), and the Bag House;
4. Failing to warn of or otherwise protect against known or foreseeable hazards; and
5. Such other and further acts or omissions as may be revealed during the prosecution of this case.

Said acts of negligence and gross negligence were the proximate cause of the injuries

to Decedent and Plaintiffs' resulting damages.

### **B.     NEGLIGENCE PER SE**

41.     Plaintiffs incorporate the above paragraphs as if set forth fully below. In the

interest of safeguarding lives and property, Texas has enacted statutory requirements that

must be adhered to by companies and individuals engaged in the business of planning,

certifying, installing and servicing fixed fire extinguisher systems.  These requirements are

found at 28 Texas Administrative Code §§ 34.501-34.523. Also in the interest of

safeguarding lives and property, Texas has enacted statutory requirements that must be

adhered to by companies and individuals engaged in the business of planning, selling,

installing, maintaining, or servicing fire protection sprinkler systems. These requirements

are found at 28 Texas Administrative Code 28 §§ 34.701-725. These laws required

Defendants to comply with adopted standards during their work on fixed fire extinguisher systems and fire protection sprinkler systems. Finally, in the interest of safeguarding lives and property, Texas has enacted statutory requirements that must be adhered to by companies and individuals engaged in the business of planning, certifying, leasing, selling servicing, testing, installing, monitoring and maintaining fire detection devices and systems. These requirements are found at 28 Texas Administrative Code 28 §§ 34.601-630. These laws adopt certain standards and minimum guidelines set forth by the National Fire Protection Association with which the regulated activities must comply. Failure to comply with these laws constitutes a criminal act.

42.     Plaintiffs belonged to the class of persons these statutes were designed to protect, and Plaintiffs' injuries is of the type the statutes were designed to prevent. Tort liability may be imposed when these statutes are violated. Defendants violated these statutes without excuse. Defendants' acts or omissions proximately caused Decedent's injuries and Plaintiffs' resulting damages.

## C.   CIVIL   CONSPIRACY   MAKES   DEFENDANTS   JOINT   & SEVERALLY LIABLE

43.     Plaintiffs incorporate the above paragraphs as if set forth fully below. Defendants combined together with the object to accomplish the unlawful purpose of avoiding, evading, or circumventing the requirements of the Texas Administrative Code cited above. Defendants had a meeting of the minds regarding this illegal course of action and an unlawful overt act that furthered this objective was committed when the fire protection devices at issue were not properly planned, designed, manufactured, installed,

tested, certified, inspected, serviced or maintained.  Plaintiffs suffered significant injury as a proximate result of Defendants' efforts to avoid, evade and circumvent the laws specifically enacted to protect people in the position of Plaintiffs.

### D.    PRODUCTS LIABILITY AGAINST AIRCON

44.    Plaintiffs incorporate the above paragraphs as if set forth fully below. Plaintiffs bring claims against AirCon under the Texas Products Liability Act of the Texas Civil Practices and Remedies Code § 82.001, et seq. AirCon designed, manufactured, and/or supplied the defective sander dust collection system and it failed to operate as intended. Upon information and belief, the *Sander Dust Collection System* was not substantially changed after it left AirCon's control. Further, the *Sander Dust Collection System* including its fire suppression system(s) was in a defective condition and was unreasonably dangerous to all users of the system and anyone standing in the system's vicinity.  Defendant AirCon as designer, manufacturer, seller, and/or supplier is strictly liable for the harm and damages caused to Plaintiffs.  Plaintiffs allege that the *Sander Dust Collection System* at issue was defective as designed, manufactured, marketed, and sold, and these defects were the actual and proximate cause of the fire and explosion resulting in Plaintiffs' injuries and damages.    AirCon failed to warn the owners and operators of the *Sander Dust Collection System* that the system would not work as intended and of the increased danger of fire and explosion caused by the latent defects with the system.

16

## E.    DAMAGES

### Morris Plaintiffs

45.    Plaintiffs incorporate the above paragraphs as if set forth fully below.  This wrongful death action is brought pursuant to §§ 71.001- 71.012 of the Texas Civil Practice and Remedies Code ("Wrongful Death Act"). Plaintiffs Debra Morris, Ashley Morris, and Amanda Wright Morris are proper wrongful death beneficiaries and are entitled to bring this action for the wrongful death of Kenneth W. Morris. Under the Wrongful Death Act, Plaintiffs are entitled to recover the following damages resulting from the death of Kenneth W. Morris:

1.  Pecuniary loss including but not limited to the advice and counsel, care, maintenance, support, household services, and reasonable contributions of pecuniary value that Plaintiffs would in reasonable probability have received from Kenneth W. Morris had he lived. Plaintiffs are also entitled to expenses for medical or psychological treatment resulting from their loss of Kenneth W. Morris;

2.  Mental anguish suffered by Plaintiffs as a result of the death of Kenneth W. Morris, including but not limited to the emotional pain, torment, and suffering that Plaintiffs would in reasonable probability, experience from the death of a close loved one;

3.  Loss of companionship and society including but not limited to love, companionship, comfort, and society that Plaintiffs would in reasonable probability have received had Kenneth W. Morris lived;

4.  Loss of inheritance of the earnings, if any, of Kenneth W. Morris, Decedent, in excess of the amount he would have used for the support of himself and in which reasonable probability would have been added to his estate and left to Plaintiffs at his natural death; and

5.  All damages allowed for a child, widow and beneficiaries in a wrongful death action including exemplary damages.

**Survival Act Claims Arising Out of the Death of Kenneth W. Morris**

46.     This action is also brought pursuant to §§ 71.021- 71.022 of the Texas Civil

Practice and Remedies Code ("Survival Act"). Plaintiff Debra Morris, as representative of

the estate of Kenneth W. Morris, seeks all damages allowed in a survival action brought

on behalf of and due to the injuries sustained by Kenneth W. Morris. Plaintiff seeks all

survival damages allowed pursuant to Texas law including but not limited to:

a)  Kenneth W. Morris's extreme pain and suffering in the past;

b)  mental anguish in the past;

c)  medical expenses in the past;

d)  funeral expenses;

e)  loss of earnings;

f)  any other pecuniary losses, actual or direct damages, or consequential damages;

g)  exemplary damages;

h)  costs of court; and

i)  Such other and further relief as the Court may deem just and proper.

**Damages Sustained by Plaintiff Jimmy Williams**

47.     Plaintiff Jimmy Williams seeks recovery for all damages as allowed by law

including but not limited to:

a)  Pain and suffering in the past and future;

b)  Mental anguish in the past and future;

c)  Medical expenses in the past in the past and future;

d)  Loss of earn capacity in the past and future;

18

e)  Physical Impairment in the past and future;

f)  Disfigurement in the past and future;

g)  Any other pecuniary losses, actual or direct damages, or consequential damages

h)  Exemplary damages;

i)  Costs of court; and

j)  Such other and further relief as the Court may deem just and proper.

### Damages Sustained by Plaintiff Rebecca Williams

48.   Plaintiff Rebecca Williams is the spouse of Jimmy Williams and seeks recovery for all damages as allowed by law arising out of personal injuries to Jimmy Williams including but not limited to:

1.   Loss of consortium, companionship and society including but not limited to love, companionship, comfort, and society that Plaintiff Rebecca Williams  would in reasonable probability have received had her husband Jimmy Williams not been seriously burned and injured as a result of Defendants' negligence;

2.   Pecuniary loss including but not limited to the advice and counsel, care, maintenance, support, household services, and reasonable contributions of pecuniary value that Plaintiff Rebecca Williams would in reasonable probability have received from Jimmy Williams but for his injuries sustained in the incident made the basis of this suit; and

3.    All other damages which Plaintiff may show herself to be entitled arising out of the incident made the basis of this suit.

### Damages Sustained by Plaintiff Orlando Ordaz

49.   Plaintiff Orlando Ordaz seeks recovery for all damages as allowed by law including but not limited to:

a)  Pain and suffering in the past and future;

b)  Mental anguish in the past and future;

c) Medical expenses in the past in the past and future;

d) Loss of earn capacity in the past and future;

e) Physical Impairment in the past and future;

f) Disfigurement in the past and future;

g) Any other pecuniary losses, actual or direct damages, or consequential damages

h) Exemplary damages;

i) Costs of court; and

j) Such other and further relief as the Court may deem just and proper.

**Damages Sustained by Plaintiff Roy McCullough**

50.     Plaintiff Roy McCullough seeks recovery for all damages as allowed by law including but not limited to:

a) Pain and suffering in the past and future;

b) Mental anguish in the past and future;

c) Medical expenses in the past in the past and future;

d) Loss of earn capacity in the past and future;

e) Physical Impairment in the past and future;

f) Disfigurement in the past and future;

g) Any other pecuniary losses, actual or direct damages, or consequential damages

h) Exemplary damages;

i) Costs of court; and

j) Such other and further relief as the Court may deem just and proper.

## F.  EXEMPLARY DAMAGES ON BEHALF OF ALL PLAINTIFFS

51.     Plaintiffs incorporate the above paragraphs as if set forth fully below. Defendants' acts and omission rise above mere negligence and constitute gross negligence. Defendants' actions when viewed objectively from Defendants' standpoint at the time of the occurrence of Defendants' acts or omissions involved an extreme degree of risk considering the probability and magnitude of the potential harm to others. These Defendants had a subjective awareness of the risk involved, but nevertheless preceded with conscious indifference to the rights, safety, or welfare of others. Defendants also acted with malice.  Therefore, Plaintiffs seek the imposition of exemplary or punitive damages upon Defendants so as to punish Defendants and deter such grossly negligent conduct in the future.

## PRAYER

1.  For these reasons, Plaintiffs ask for judgment against Defendants for the following:

   a.  All damages pled for herein;

   b.  Prejudgment and post judgment interest;

   c.  Costs of suit;

   d.  Exemplary Damages; and

   e.  All other relief to which Plaintiffs may show themselves to be entitled and which the Court deems appropriate.

Respectfully submitted,


By:     /S/                              
        JANE S. LEGER
        State Bar No. 00788814
        **DUGAS LEGER LAW FIRM**
        805 Park Street
        Beaumont, Texas  77701
        Phone:  409.813.1111
        Facsimile: 409.813.8605
        E-mail: jleger@dugasleger.com


        AND

By:     /S/                              
        MIKE LOVE
        Texas Bar No.: 24004778
        **MIKE LOVE & ASSOCIATES, LLC**
        P.O. Box 527
        Lufkin, Texas 75902-0527
        Phone: 936.632.2000
        Facsimile: 936.632.2005
        E-mail: mikelove@texaslawoffice.com


        ***ATTORNEYS FOR PLAINTIFFS***