**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

FILED: **7/14/17**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

| | | |
|---|---|---|
| **DEBRA MORRIS, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE OF THE** | § | |
| **ESTATE OF KENNETH W. MORRIS,** | § | **NO. 9:16-cv-35** |
| **ASHLEY MORRIS, AMANDA** | § | |
| **MORRIS WRIGHT, JIMMY** | § | |
| **WILLIAMS, REBECCA WILLIAMS,** | § | |
| **ORLANDO ORDAZ, and ROY** | § | |
| **MCCULLOUGH,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AIRCON CORPORATION, GRECON,** | § | |
| **INC., MID-SOUTH ENGINEERING** | § | |
| **COMPANY, and GLOBAL ASSET** | § | |
| **PROTECTION SERVICES, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER DENYING DEFENDANT GRECON, INC.'S MOTIONS TO STRIKE**
**THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESSES**

This case is assigned to the Honorable Ron Clark, Chief United States District Judge, and

is referred to the undersigned United States Magistrate Judge for pretrial management.   Doc. No.

16.   Pending before the court is Defendant GreCon, Inc.'s ("GreCon") "Motion to Strike the

Testimony of Plaintiffs' Experts John Holecek and Michael Sawyer."   Doc. No. 95.   Because the

testimony GreCon seeks to exclude involve issues of fact that are best resolved by the jury,

GreCon's motion to strike the testimony of Holecek and Sawyer is denied.

## I.   BACKGROUND

This action arises from a fire and subsequent explosion on April 26, 2014, in the Sander

Dust Collection and Baghouse Systems area of the Georgia-Pacific plywood mill in Corrigan,

Texas (the "Corrigan Mill Explosion").   Doc. No. 50, at 1.   Kenneth Morris, Jimmy Williams,

Orlando Ordaz, and Roy McCollough were Georgia-Pacific employees who were present and injured during the Corrigan Mill Explosion.   Morris' injuries ultimately caused his death 42 days after the Corrigan Mill Explosion.   *Id*. at 2-3, 10.   The Sander Dust Collection and Baghouse Systems are designed,[1] manufactured and installed by Defendant Aircon Corporation ("Aircon"), and are intended to collect dust generated by the plywood sander at the Corrigan mill.   *Id*. at 5. Baghouses generally pose a risk of fire due to the large amounts of wood dust particles contained in them, and as a result, the Sander Dust Collection and Baghouse Systems came equipped with a spark and fire detection and extinguishment system designed by Defendant GreCon, Inc. ("GreCon").   *Id*. at 5-6.   The GreCon system was intended to prevent fires in the Sander Dust Collection and Baghouse Systems in two ways.   First, the GreCon system detects sparks or fires in the duct work portion of the Sander Dust Collection and Baghouse Systems, such that if any sparks or fires are detected, the GreCon system extinguishes them before they reach the baghouses.   Because they contain large amounts of sand dust, they are especially susceptible to fires, deflagrations or explosions.   *Id*. at 6.   Second, the Sander Dust Collection and Baghouse Systems contain a deluge system, a fail-safe intended to flood the baghouse with water in the event of a fire.   *Id*.

On the evening of April 26, 2014, a "double feed" occurred at the Corrigan mill's sander. *Id*. at 10.   A double feed occurs when two plywood boards are simultaneously pulled into the sander, rather than the standard single board.   The double feed produced sparks and increases in heat at the sander, causing a fire that spread into the duct work components of the Sander Dust Collection and Baghouse Systems.   *Id*.   Plaintiffs Morris, Williams, Ordaz and McCollough

---

[1] According to the facts alleged in the Plaintiffs' operative complaint, Defendant Mid-South Engineering Company ("Mid-South") created the initial design specifications for the Sander Dust Collection and Baghouse Systems, and was involved with the initial inspection of those systems after they were completed.

were called upon to contain the fire and secure the baghouse, but the baghouse exploded, severely burning them.  *Id*.  Morris ultimately died from his injuries in June 2014, and Williams, Ordaz and McCullough continue to suffer complications resulting from their injuries at the Corrigan mill. *Id*. at 10-11.

Relevant to GreCon's motion to strike, the Plaintiffs seek to admit two expert opinions regarding the Corrigan Mill Explosion.  The first, by John B. Holecek, a licensed professional engineer, addresses the origin and cause of the fire and explosion at the Corrigan mill.  *See* Doc. No. 86, ex. 4.  The second, by Michael E. Sawyer, also a licensed professional engineer, addresses the process safety aspects of the Corrigan mill in place at the time of the April 26, 2014 Corrigan Mill Explosion.  *See* Doc. No. 86, ex. 5.

## II. LEGAL STANDARD

The admission or exclusion of expert testimony is a matter within the discretion of the district court.  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).   However, Rule 702 of the Federal Rules of Evidence provides the framework by which the court evaluates the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702; *accord Kuhmo Tire*, 526 U.S. at 152; *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  In applying Rule 702, the court's "role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the

issue before the jury so as to be appropriate for the jury's consideration." *BMC Software, Inc. v. Servicenow, Inc.*, 2:14-CV-903-JRG, 2016 WL 367251, at *2 (E.D. Tex. Jan. 29, 2016) (Gilstrap, J.) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002)).   This role requires the court to make a preliminary assessment of whether the expert testimony is reliable and relevant. *Kuhmo Tire*, 526 U.S. at 152; *Daubert*, 509 U.S. at 592-93.   The proponent of the proffered expert testimony "has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met."   *U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing FED. R. EVID. 104(a) cmt.).

The court is to consider several criteria in determining whether an expert's opinion is admissible.   First, it must determine whether the witness is qualified as an expert based on her knowledge, skill, experience, training, or education. *U.S. v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (citing FED. R. EVID. 702).   "[T]he witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *U.S. v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *U.S. v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (internal quotations omitted).

Next, the court is to decide whether the proffered testimony is relevant: that is, whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").

Finally, the district court must determine whether the proffered expert's testimony is reliable. *See* FED. R. EVID. 702(b)-(d); *Kuhmo Tire*, 526 U.S. at 147-52; *Daubert*, 509 U.S. at

592-95.   This determination is the product of a three-part analysis: whether (i) "the testimony is based on sufficient facts or data;" (ii) whether "the testimony is the product of reliable principles and methods;" and (iii) whether "the expert has reliably applied the principles and methods to the facts of the case."   FED. R. EVID. 702(b)-(d).   In *Daubert*, the Supreme Court recognized certain factors as useful in determining the reliability of expert testimony: whether a theory or technique can be (and has been) tested, whether a theory or technique has been subjected to peer review and publication, known or potential rate of error, and general acceptance within the scientific community.   509 U.S. at 593-94.   While the *Daubert* factors are relevant in many cases, the court is not required to apply them in all cases, as they may be unhelpful in determining the reliability of some types of expert testimony.   *Stolt Achievement, Ltd. v. Dredge B. E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006) (citing *Kuhmo Tire*, 526 U.S. at 149 ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony")).   The overarching goal in assessing the reliability of expert testimony "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire*, 526 U.S. at 152.

The court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions."   *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).   The court's assessment of admissibility is not intended to replace the adversarial system, which is the proper mechanism to highlight weak evidence.   *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).   "Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

Holecek and Sawyer are retained by the Plaintiffs as experts in different capacities. Holecek's report addresses the causes of the Corrigan Mill Explosion itself.   By contrast, Sawyer separately addresses the process safety elements present at the Corrigan mill at the time of the explosion.   Because of the different nature of the two expert reports, the undersigned will address the admissibility of the two experts' testimonies in separate sections.

A. *Holecek's report is admissible, reliable, and relevant to issues of liability regarding the Corrigan Mill Explosion*

Holecek is a licensed professional engineer, employed by the Warren Group, Inc., a forensic engineering and consulting firm, since 2007.   According to Holecek's affidavit, his engineering specialties include fire and explosion analysis and causation, fire and life safety standards and code compliance, control systems analysis, property loss analysis, and safety design analysis.   Doc. No. 86, ex. 4.

The Warren Group was retained by the Plaintiffs to provide opinions regarding the origin and cause of the Corrigan Mill Explosion, and Holecek is the principal engineer responsible for the investigation.   *Id*.   In developing his report, Holecek, along with his colleague Jerry Tindal, inspected and photographed the incident site on April 30, 2014, four days after the Corrigan Mill Explosion.   *Id*. at 1.   Holecek also researched applicable codes and standards for the equipment present at the time of the explosion, including the GreCon system, in connection with his report. *Id*. at 1-2.

Holecek's report offers four hypotheses as to the cause of the Corrigan Mill Explosion. According to his affidavit, the "most probable sequence of events" leading up to the explosion are

Hypotheses 3 and 4.   Hypothesis 3 offers the possibility that burning material could have entered the baghouses on the clean air side of the system, which is not isolated from the bypass air stream component of the system.   *Id*. at 10.   By virtue of the improper entry of burning material into the system, Holecek hypothesizes, sparks or embers could enter the "clean air ducts on the exit side" of the Sander Dust Collection and Baghouse Systems area.   *Id*.   Those sparks or embers could then ignite wood dust attached to what should otherwise be clean surfaces within the Sander Dust Collection and Baghouse Systems, generating smoke in the top of the baghouse and discharge duct components of the systems that ultimately produced the explosion that resulted in the Corrigan Mill Explosion.   *Id*. at 11.   Hypothesis 4 is largely similar to the events described in Hypothesis 3, but for a change in the location of the initial smoke explosion.   Hypothesis 4 theorizes that rather than occurring at the top of the baghouse, the smoke explosion could have occurred "between the sander and baghouse," creating a pressure front traveling the length of the duct, "causing an expulsion of flames from the sander and the stack."   *Id*. at 11-12.   Holecek's report concludes by noting that Hypothesis 4 more closely mirrors the witness statements describing the Corrigan Mill Explosion.   *Id*. at 12.

Regardless of whether Hypothesis 3 or 4 is the appropriate description of events resulting in the Corrigan Mill Explosion, Holecek's report makes clear that his report's conclusion is that the GreCon system was improperly located at an excessive distance from the sander.   *Id*. at 14. His report also notes that despite arguments that locating the GreCon system closer to the sander pre-explosion was unfeasible, "the fact that the post loss replacement system has been installed about 100 feet closer to the sander indicates the feasibility of having the zone closer to sander." *Id*. at 14.   Holecek's report concludes "that the location of the first zone of spark detection is improper and a cause of the explosion," and that "GreCon had the superior knowledge of the

proper application of their own equipment and should have insured the first zone of detection was properly located during the engineering, installation or start up phases." *Id.*

### i. Holecek is qualified to serve as an expert

The first issue is whether Holecek is qualified as an expert based on knowledge, skill, experience, training, or education. *See U.S. v. Cooks*, 589 F.3d at 179 (citing FED. R. EVID. 702). Holecek was retained by the Plaintiffs to discuss the causality for the Corrigan Mill Explosion, including the systems in place at the time of the explosion. Holecek is a licensed professional engineer, has been working in the engineering field for more than three decades, and holds both bachelor's and master's degrees in mechanical engineering. Doc. No. 86, ex. 4, at 52-53.

Holecek has established a long history of specialized knowledge in the fields of mechanical engineering and design such that he is qualified to testify and proffer reports in the capacity for which he was retained. GreCon argues that Holecek is not qualified to provide expert opinions regarding the responsibility for the design of the spark detection system, because it "goes to the question of duty." Doc. No. 95, at 9 (citing *Toshiba Int'l Corp. v. Henry*, 152 S.W.3d 774, 783 (Tex. App.—Texarkana 2004, no pet.). Holecek's report contains no statements regarding the legal concept of negligence, nor the underlying question of duty. Holecek's report simply draws factual conclusions regarding the installation of the GreCon system and the appropriate location of that system in the Sander Dust Collection and Baghouse Systems area of the Corrigan mill. The undersigned finds that Holecek is qualified to serve as an expert in this case.

### ii. Holecek's expert report is relevant to the issues presented in this case

The next issue is whether Holecek's proffered testimony is relevant. *See* FED. R. EVID. 702(a) (requiring a finding that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). When

assessing the relevance of an expert's report, the court often looks to whether an expert can determine the cause of the incident in question.   *Kumho Tire Co.,* 526 U.S. at 154.   GreCon argues that Holecek's report does not argue that "GreCon's product/conduct was the cause-in-fact of the accident—*i.e.*, an opinion that if the Zone 4 detector had been moved up 100 feet, the accident probably would not have occurred."   Doc. No. 95, at 11.

GreCon's argument misstates the requirements of Federal Rule of Evidence 702.   For Holecek's report to be deemed relevant, he need not conclusively identify the cause of the Corrigan Mill Explosion.   Rather, his report must simply assist the trier of fact in assessing all evidence when determining the facts at issue in the case.   In this instance, Holecek's report offers four hypotheses regarding the possible causes of the Corrigan Mill Explosion.   Holecek's report further identifies alleged flaws with the location of the spark detection system present in the Sander Dust Collection and Baghouse Systems area, and identifies the parties responsible for the location of the system, including GreCon.   The undersigned concludes that Holecek's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence" related to the causes of the Corrigan Mill Explosion, as well as issues related to the location of the GreCon spark detection system.   *See* FED. R. EVID. 702(a).

### iii.  The method presented by Holecek in developing his report is reliable

Finally, the undersigned must determine whether the expert's proffered opinion is reliable. *See* FED. R. EVID. 702(b)-(d).   GreCon appears to argue that Holecek's report regarding causation is not reliable because "an expert offering opinions on causation is required to consider other plausible causes of injury and rule them out with reasonable certainty."   Doc. No. 95, at 11 (citing *McNabney v. Lab. Corp. of Am.*, 2005 WL 2997969, 153 F. App'x 293, 295-96 (5th Cir. 2005)). GreCon apparently misinterprets the purpose of the report, as Holecek's report is not offered to

provide conclusions regarding the causes of the Plaintiffs' injuries.   Rather, Holecek's report is offered to provide theories as to the cause of the Corrigan Mill Explosion.   Moreover, contrary to GreCon's suggestion that Holecek be required to rule out other plausible causes for the Corrigan Mill explosion, Texas law provides that there can be more than one proximate causes for an event. *See In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985*, 919 F.2d 1079, 1086 (5th Cir. 1991) ("In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or similar event, might reasonably result therefrom. *There may be more than one proximate cause of an event*.") (citing Texas law) (emphasis added).

The relevant inquiry in assessing whether an expert report is reliable is whether there are any reasonable criteria on which the expert based his opinion.   *See Stolt Achievement*, 447 F.3d at 366; *see also Huck v. City of Beaumont*, 147 F. Supp. 2d 565, 568 (E.D. Tex. 2001) (Cobb, J.) ("[T]he *Daubert* inquiry is always fact-specific, and . . . the *Daubert* factors may not all apply"). In this instance, Holecek's process for developing the hypotheses for the Corrigan Mill Explosion "involves collecting data, analyzing that data and then developing and testing hypotheses as to what caused the fire."   Doc. No. 86, ex. 4, at 7.   Holecek's report also took into consideration National Fire Protection Association (NFPA) standards when developing his report.   *Id*.   Finally, Holecek accounted for witness statements when presenting his hypotheses.   *Id*. at 11.   The undersigned finds that Holecek used reliable principles and methods in developing his report.

Upon a review of Holecek's report, the undersigned concludes that it was developed using reliable methodology, is relevant to the present matter, and the ultimate weight of his testimony is an issue for the jury in this case.

> ## B. *Sawyer's report is admissible, reliable, and relevant to process safety measures in place at the time of the Corrigan Mill Explosion*

Sawyer was retained by the Plaintiffs to provide opinions on the process safety aspects in place at the Corrigan mill at the time of the Corrigan Mill Explosion.   Sawyer's report, among other matters, draws conclusions regarding alleged defects in the GreCon spark detection system, including both design and implementation defects.   Unlike Holecek's report, Sawyer primarily focuses upon GreCon's implementation of its spark detection system at the Corrigan mill, including the location of the system within the Sander Dust Collection and Baghouse Systems, as well as GreCon's alleged failure to conduct a hazard analysis when implementing its spark detection system.

Relevant to GreCon's motion to strike, Sawyer draws the following conclusions regarding GreCon's spark detection system: Sawyer alleges that GreCon's spark detection system is "dependent upon the conveying systems air velocity and the progression of sparks within the ductwork."   Doc. No. 86, ex. 5, at 15.   Despite this alleged dependence, Sawyer notes that "GreCon representatives that inspected the system as installed at the mill testified that air velocity was not verified nor was it a concern."   *Id*.   Sawyer's report argues that this lack of concern, as well as a trust of proper installation by GreCon representatives, was misguided because the GreCon "system design basis was not based on analyzed characteristics of the dust material generated at the sander."   *Id*. at 14-15.   Sawyer's report concludes that "GreCon's repeated inactions and failures in relation to its inspection and services the spark detection/extinguishment system and disregard of design deficiencies are egregious and demonstrate a callous attitude toward life (and) safety."   *Id*. at 15.

     i.   Sawyer is qualified to serve as an expert

Sawyer is a licensed professional engineer and maintains Certified Safety Professional designation in system safety aspects.   Doc. No. 86, ex. 5, at 3.   Sawyer holds an associate's

degree in applied science, fire science, from Wilson Technical College, as well as a bachelor's degree in safety engineering from Texas A&M University.  *Id*. at 19.  Sawyer has worked for 34 years in the safety engineering field, with the largest portion of that time spent in the area of process safety.  *Id*. at 4, 21.

In addition to his general qualifications, Sawyer's report indicates that he reviewed relevant NFPA standards in preparing his conclusions, as well as depositions and exhibits related to the events surrounding the Corrigan Mill Explosion.  *Id*. at 4.  Sawyer has also reviewed videos illustrating the function of the Sander Line dust collection system that comprises the Sander Dust Collection and Baghouse Systems.  In summary, Sawyer has demonstrated specialized knowledge within the field of process safety, as well as a general knowledge of the Corrigan mill's Sander Dust Collection and Baghouse Systems sufficient to demonstrate that he is qualified to serve as an expert in this matter.

ii.  Sawyer's expert report is relevant to the issues presented in this case

GreCon does not appear to challenge Sawyer's report's relevance to the present matter. The undersigned finds that Sawyer's report directly addresses the process safety systems in place at the Corrigan mill at the time of the explosion, and specific to this motion, draws conclusions as to the role the GreCon system's alleged defects played in contributing to the explosion.  After conducting its own review of Sawyer's report, the undersigned concludes that Sawyer's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence" related to the adequacy of GreCon's spark detection system, as well as the manner in which it was installed and monitored at the Corrigan mill.  FED. R. EVID. 702(a).  Accordingly, Sawyer's proffered testimony is relevant.

iii.  The method presented by Sawyer in developing his report is reliable

Finally, the undersigned must determine whether Sawyer's opinion is reliable.   GreCon argues that Sawyer's conclusions regarding feasibility of an alternative design "is limited to a single sentence," and thus, "this unsupported and conclusory statement is not based on a reliable foundation of facts or data."   Doc. No. 95, at 13-14.   The undersigned disagrees.   Sawyer's proffered testimony notes that there were "several proven deductive and inductive hazard analysis methods (that) had been available for decades prior to the design of the dust collection system in 2004," documenting NFPA standards and guidelines to support this basis.   Doc. No. 86, ex. 5, at 11.   Sawyer's report and underlying conclusions regarding feasibility of alternative design are based on sufficient facts and data, the product of reliable principles and methods, and the result of Sawyer reliably applying the principles and methods to the facts of this case.   FED. R. EVID. 702(b)-(d).   While the ultimate issue of feasibility is an issue left for the trier of fact, for purposes of GreCon's motion to strike, Sawyer's testimony regarding feasibility should be admitted.

GreCon also argues that Sawyer's conclusions regarding GreCon's allegedly defective designs being a proximate cause of the Corrigan Mill Explosion are "conclusory and not based on a reliable foundation," because "Sawyer fails to rule out of possible causes of the accident."   Doc. No. 95, at 14.   As previously stated, there may be more than one proximate cause of an event. Sawyer's report utilized clear NFPA and industry-specific standards in reaching his conclusions regarding the GreCon system's alleged role in the Corrigan Mill Explosion, and sets forth his methodology in a clear and comprehensive manner.   Sawyer's report is sufficiently reliable to be presented to the trier of fact in this case.

## IV. CONCLUSION

Because the Plaintiffs have sufficiently established the admissibility of their expert's opinions, and because the Defendant's objections to their testimony goes to the weight, rather than

admissibility of their opinions, GreCon's "Motion to Strike the Testimony of Plaintiffs' Experts John Holecek and Michael Sawyer" (Doc. No. 95) is **DENIED**.

SIGNED this 14th day of July, 2017.

_____
Zack Hawthorn
United States Magistrate Judge